# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

NANCY KOVACIC, ET AL.,        )        Case No. 1:05CV2746
                                  )
        Plaintiffs,         )        JUDGE SARA LIOI
                                    )
     v.                    )
                                    )        **MEMORANDUM OPINION**
CUYAHOGA COUNTY        )        **AND ORDER**
DEPARTMENT OF CHILDREN AND   )
FAMILY SERVICES, et. al,     )
                                    )
        Defendants.       )

Plaintiffs in this case are Daniel and Katherine Kovacic, who were both minors when this suit was filed. Plaintiffs allege civil rights violations against various county and city entities and individual municipal employees and seek damages resulting from the warrantless entry into their home and their temporary removal from the care and custody of their mother, Nancy Kovacic. Following appeal and remand from the Sixth Circuit Court of Appeals, the remaining defendants include Cuyahoga County Department of Children and Family Services (CCDCFS), and social workers, Patricia Campbell Ponstingle, Pam Cameron, Vikki Csornok and Pam Gaylord (collectively, "defendants").

Before the Court are the motions for summary judgment filed by plaintiffs (Doc. 120) and defendants (Doc. 121). Defendants oppose plaintiffs' motion (Doc. 125). Plaintiffs oppose defendants' motion (Doc. 129), and defendants have filed a reply brief (Doc. 131). For the reasons that follow, the dispositive motions are **GRANTED** in part, and **DENIED** in part.

## I.      BACKGROUND

The history of this case dates back to 1995, when, following the contentious divorce of Nancy and Tom Kovacic, CCDCFS began receiving reports of alleged abuse and

neglect by Nancy of the couple's two children, Katherine and Daniel, including one incident where Daniel allegedly stabbed his mother with a pen. Mr. Kovacic had also reportedly assaulted Daniel.

On March 1, 2002, the CCDCFS social worker assigned to the case, Patricia Campbell Ponstingle, interviewed Daniel at his school. Daniel told Ponstingle that his mother hit him on a regular basis and had given his sister a bloody nose "awhile ago for being too loud." On March 22, 2002, Ponstingle scheduled an intervention meeting or "staffing" for March 26, 2002 to address the abuse allegations and discuss the service options available to keep the family "intact." CCDCFS had not contemplated removal of the Kovacic children at that time.

Plaintiffs contend that on the morning of March 26, 2002, Ponstingle called Ms. Kovacic to tell her that the staffing was postponed until the following day. Defendants, however, maintain that Ms. Kovacic requested the change because she was unavailable that day. Whatever the reason, it is undisputed that Ms. Kovacic did not appear at the CCDFCS offices on March 26, 2002, but other members of the Kovacic family did, including Nancy's ex-husband, Mr. Kovacic, his father Ed Kovacic and his sister Colleen Kovacic-Nola. North Olmsted Police Officers Chung, Calvitti and Sergeant Kilbane also appeared. Despite the absence of Ms. Kovacic, CCDCFS employees agreed to meet with Kovacic family members and the police officers.

During the meeting, the Kovacics and the police officers advised the social workers that Nancy had been exhibiting disturbing behavior that was "escalating." They also expressed their belief that Daniel and Katherine were in "imminent risk" of physical harm from Ms. Kovacic. The police officers detailed their encounters with Ms. Kovacic, including two incidents dating back to 1995, when Nancy allegedly filed a false kidnapping report against Mr.

2

Kovacic and stole a gun from his home, which she maintained she removed to protect Daniel and Katherine. The officers also advised the social workers of problems Nancy had with neighbors, reports of her dog running loose, her allegedly angry outburst following a traffic accident, and numerous "nebulous" reports she filed alleging that Mr. Kovacic had violated a protective order. The officers also recounted interactions between Nancy and Colleen Kovacic-Nola, including allegations that Nancy yelled and screamed at Colleen on March 15, 2002, and that Colleen filed an assault report against Nancy on March 22, 2002. The assault charge was eventually dismissed. Officer Chung and Sergeant Kilbane both expressed their belief that Nancy had the potential to be violent toward her children.

Based on this information, CCDCFS representatives determined that the Kovacic children were at a more elevated risk than they first thought, and determined it was immediately necessary to remove Daniel and Katherine from Nancy's home in light of their belief that the children were in imminent danger of physical harm.

That same day, defendant Ponstingle, after seeking approval from her supervisor and receiving the signature of the assigned assistant prosecuting attorney, caused the execution of a Temporary Emergency Care (TEC) Order, which permits CCDCFS employees to remove children on an emergency basis prior to a judicial hearing.[1]

With TEC order in hand, defendant Ponstingle, accompanied by North Olmsted police officers went to Ms. Kovacic's home. When Ms. Kovacic refused to let the police enter her home, the officers forced their way in, and Ponstingle followed. Ponstingle then removed

---

[1] A Cuyahoga County Juvenile Court Standing Order that the Administrative Judges of the court promulgated established the TEC Order process. Pursuant to the standing order, the court appointed social workers employed by CCDCFS as duly authorized officers of the court in accordance with Ohio Rev. Code 2151.31 "with authority to remove and provide temporary emergency care and shelter for children who are at imminent risk of serious physical or emotional harm." (Doc. 125-2). The standing order also requires the filing of a complaint on the next business day following the removal of a child, which is followed by a hearing held in accordance with state law. *Id.* Finally, the standing order provides that the social workers may request the assistance of law enforcement officers in effecting the removal of children. *Id.*

Daniel and Katherine from the home without further incident.

The next day, March 27, 2002, Assistant Prosecuting Attorney Dorothy Reichenback prepared and filed a Complaint for Temporary Custody in the Cuyahoga County Juvenile Court. The juvenile court conducted a shelter hearing on March 29, 2002. Ms. Kovacic was present at hearing and was represented by counsel. The magistrate issued an order finding that "there is probably cause for removal of the children . . ." and granted temporary custody of the Kovacic children to CCDCFS. (Doc. 121-14.) Nancy did not appeal the magistrate's decision despite an opportunity to do so.

The Kovacic children were not returned to Ms. Kovacic until approximately ten months later when, after transfer of the action to the Lake County Juvenile Court, the matter was dismissed on November 7, 2003, upon finding no adjudication of the CCDCFS's complaint within the time frame mandated by Ohio Rev. Code § 2151.35(B)(1).

The present action was filed on November 28, 2005 by Ms. Kovacic on behalf of herself and her children asserting claims under 42 U.S.C. § 1983 for deprivation of their constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, for conspiracy under 42 U.S.C. § 1985, for municipal liability, and for various state law violations. On defendants' Motion for Summary Judgment (Doc. 42), this Court dismissed Nancy's claims, finding those claims barred by the statute of limitations in Ohio for § 1983 actions and state law tort claims. (Doc. 88 at 10-14.) The Court also dismissed the children's federal claims related to the removal of Daniel and Katherine from their home pursuant to the *Rooker-Feldman*[2] doctrine. (*Id.* at 14-18.)

The Court found, however, that it retained jurisdiction over the remaining claims

---

[2] *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923).

related to the warrantless entry into the Kovacic home. (*Id.* at 18.) The Court denied defendants'

motion for summary judgment on the children's claims involving the warrantless entry. (*Id.* at

18-23.) Specifically, this Court held that the record did not support a finding that exigent

circumstances existed when the police forcibly entered plaintiffs' home without a warrant. (*Id.* at

18-21.) The Court also held that the juvenile court's post-removal determination did not touch

upon the Fourth Amendment violation alleged in the suit and, thus, was not entitled to preclusive

effect. (*Id.* at 21-23.)

        The Court also denied defendants' summary judgment motion as to the plaintiffs'

municipal liability claims against the City of North Olmsted and Cuyahoga County, finding that

CCDCFS had a policy of obtaining TEC Orders and the assistance of local police to justify the

warrantless entry into homes to remove children at risk. The Court held that this policy was the

"moving force" behind the warrantless entry into the Kovacic home. (*Id.* at 23-27.) As well, the

Court denied requests for absolute and qualified immunity made by defendant Ponstingle and the

police officers who entered plaintiffs' home without a warrant. Finally, the Court dismissed

plaintiffs' § 1985 conspiracy claim and state law tort claims.

        Following the Court's ruling on defendants' summary judgment motion, the

North Olmsted defendants reached a settlement with plaintiffs. Defendant Ponstingle filed an

interlocutory appeal with the U.S. Sixth Circuit Court of Appeals challenging the Court's ruling

denying her qualified immunity with respect to the illegal entry claims. Defendant Ponstingle

and plaintiffs reached a settlement with regard to the immunity issue raised by Ponstingle on

interlocutory appeal. The Court then dismissed plaintiffs' unlawful entry claim against all

defendants, including plaintiffs' related municipal liability claim against the City of North

Olmsted. The remaining defendants thus were Cuyahoga County and the CDCFCS employees.

Plaintiffs appealed the Court's dismissal of Nancy's claims on statute of limitations grounds and the dismissal of the children's clams under the *Rooker-Feldman* doctrine. The Sixth Circuit affirmed the Court's dismissal of Ms. Kovacic's claims, but reversed the dismissal of the children's claims and remanded those claims as not barred by *Rooker-Feldman*. Following remand, the remaining claims are Katherine and Daniel Kovacic's constitutional claims asserting violations of the Fourth Amendment (unlawful seizure) and the Fourteenth Amendment (substantive and procedural due process) (Counts II, III, and IV) as against the individual social workers, and their municipal liability claim against the County (portion of Count V).

Before the Court are cross-motions for summary judgment brought by plaintiffs and defendants pursuant to Fed. R. Civ. P. 56. Plaintiffs seek summary judgment, arguing that there is no genuine issue of fact that no exigent circumstances justified the removal of Daniel and Katherine and, therefore, they are entitled to judgment as a matter of law on their constitutional claims. Defendants seek summary dismissal of plaintiffs' claims and contend that plaintiffs cannot establish a violation of their constitutional rights. Defendants also seek absolute and/or qualified immunity for all of the individual defendants and dismissal of Pamela Gaylord as a defendant due to her lack of participation.

## II.     STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to

interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n.,* 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. The non-moving party is under an affirmative duty to point out facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

## III.    ANALYSIS

### A.    Law of the Case

As a threshold matter, the Court will address the parties' disagreement as to the application of the law-of-the-case doctrine in this case. The law-of-the-case doctrine bars

challenges to a decision made at a previous stage of the litigation, which could have been challenged in a prior appeal, but were not. *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997); *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529, 532 (6th Cir. 2008) ("A party that fails to appeal waive[s] his right to raise the […] issue […] before the district court on remand or before this court on appeal after remand.") (quoting *Adesida*, 129 F.3d at 850). Under this doctrine, "a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) (citing *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S. Ct. 2166, 2177, 100 L. Ed. 2d 811 (1988)). *See also, E.E.O.C. v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Canada, Local No. 120*, 235 F.3d 244, 249-50 (6th Cir. 2000) ("Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case. ") (quoting *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir.1997)).

The Supreme Court has noted that this doctrine will not deprive a court of the power to revisit an issue:

> [T]he law-of-the-case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power."[…] A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances[…].

*Christianson,* 486 U.S. at 817, 108 S. Ct. at 2178 (quoting *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S. Ct. 739, 740, 56 L. Ed. 1152 (1912)). The doctrine, "therefore, does not foreclose a court from reconsidering issues in a case previously decided by the same court […]." *Todd*, 920 F.2d at 403. There are three exceptional circumstances under which a court will reconsider a previously decided issue: "(1) where substantially different evidence is raised on subsequent

trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *United States v. Rayborn*, 495 F.3d 328, 337 (6th Cir. 2007) (quoting *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006)). "It is within the sole discretion of a court to determine if a prior ruling should be reconsidered." *Todd,* 920 F.2d at 403.

Plaintiffs argue in their motion for summary judgment that the law-of-the-case doctrine applies to the Court's previous decisions, which defendants did not appeal, including its decision regarding the absence of exigent circumstances and its denial of qualified immunity to defendant Ponstingle. Specifically, Plaintiff contends that this Court's denial of defendants' earlier summary judgment motion, finding no exigent circumstances to justify the warrantless entry, now requires the Court to find that "the removal of the children, must, by necessity, also be in violation of the Fourth Amendment." (Doc. 120 at 5.) Further, plaintiffs argue that the Court's previous denial of defendant Ponstingle's request for absolute or qualified immunity for the warrantless entry requires the Court to do so again with regard to the removal. Finally, Plaintiffs assert that municipal liability for the removal of the children flows from the Court's previous ruling that the county had a policy of obtaining TEC orders and the assistance of law enforcement to justify warrantless entry and removal of children.

In opposition, defendants argue that the Court's past rulings with respect to those issues and claims subsequently settled by the parties are moot. Defendants point to the settlement between plaintiffs and the North Olmsted defendants with regard to the warrantless entry and contend that plaintiffs have moved for summary judgment on settled claims. Moreover, defendants argue that this Court did not reach the merits on any of the claims; therefore, the law-of-the-case doctrine is not applicable to the Court's past findings.

9

"Generally, the settlement of a dispute between the parties does render the case moot." *Aubrey v. City of Cincinnati*, 65 F.3d 168 (6th Cir. 1995) (quoting *Int'l Union, United Auto., Aerospace, Agric. and Implement Workers of Am., v. Dana Corp.*, 697 F.2d 718, 720-21 (6th Cir. 1983)). An exception to this general rule applies in instances "in which one issue in a case has become moot, but the case as a whole remains alive because other issues have not become moot." *Id.*

By Judgment Entry docketed on November 4, 2008, this Court clarified the remaining parties and claims in this case following its ruling, granting in part and denying in part defendants' motions for summary judgment. (Doc. 107.) The Court noted that plaintiffs had reached a settlement with defendant Ponstingle with regard to her immunity claims related to the warrantless entry. The Court noted the only issues that had been settled and dismissed were those with regard to the warrantless entry (Counts I and V of the Amended Complaint) and all claims against the North Olmsted defendants. The record does not reflect that plaintiffs reached a settlement with defendants, including Ponstingle, with respect to the seizure and removal of the children. Thus, while the issues with regard to the entry (a search) are moot by virtue of settlement, those issues with regard to the removal (a seizure) are not moot. Accordingly, to the extent the plaintiffs' motion seeks judgment on claims related to the seizure, the Court rejects defendants' contention that these claims were settled.

It does not automatically follow, however, that the Court must necessarily find the seizure unlawful, that defendants are not entitled to immunity, and that the County is liable, solely on the basis of the Court's previous ruling regarding the unlawful entry. "Although related to claims of Fourth Amendment unreasonable searches, claims of Fourth Amendment unreasonable seizures require separate analysis." *Canter v. Reeves*, No. 05-74791, 2008 WL

1925048, at *6 (E.D. Mich. May 1, 2008) (citing *O'Donnell v. Brown*, 335 F. Supp. 2d 787, 806 (W.D. Mich. 2004)). An unlawful entry does not automatically make the seizure unlawful. *O'Donnell*, 335 F. Supp. 2d at 806. Accordingly, plaintiffs' motion for summary judgment based solely on the law of the case is **DENIED**.

Nevertheless, to the extent that the Court's rulings with regard to the removal, either explicitly or by necessary inference, address the issues presented in the instant motions, those rulings constitute the law of the case and are not moot. *Local No. 120*, 235 F.3d at 249-50. In the absence of extraordinary circumstances, this Court is loathe to revisit its prior decisions unless defendants present this Court with new evidence, a change in controlling law, or otherwise show that manifest injustice will result. *Todd*, 920 F.2d at 403. With this in mind, the Court will turn to the issues presented in the pending motions.

**B.      Plaintiffs' Motion for Summary Judgment**

Plaintiffs assert they are entitled to summary judgment on all of their remaining claims. First, plaintiffs contend that the County is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692, 98 S. Ct. 2018 (1978), for causing the North Olmsted police officers to subject plaintiffs to a tort. Regarding their Fourth Amendment unlawful seizure claims, plaintiffs allege that the standing order of the juvenile court is unconstitutional both facially and as applied; specifically, plaintiffs argue that defendants violated their rights when they seized them and removed them from their home without exigent circumstances and without a court order. Regarding their procedural due process claim, plaintiffs allege that they were deprived of their constitutional liberty (i.e., family integrity) rights without due process when defendants failed to provide them or their mother with notice and a hearing prior to the removal and when defendant Ponstingle made knowingly false statements in the sworn complaint. Next, plaintiffs allege that

defendants violated their substantive due process right to family integrity, and that under a strict scrutiny standard, the seizure was based neither on a reasonable suspicion of abuse or imminent danger of abuse, nor was it narrowly tailored. Finally, regarding their *Monell* claim, plaintiffs allege the County had an unconstitutional policy of bypassing judicial authority and relying on a non-particularized standing order to justify the warrantless removal of children.

1.      **Section 1983 Liability of County for Actions of City Defendants**

Plaintiffs' first claim is that the County is vicariously liable for the torts of the city police officers. The Court will presume the tort that plaintiffs are referring to is the illegal entry into the Kovacic home. The claims related to the entry, as noted above, have long since been settled. Furthermore, the city's actions cannot form the basis of a claim against the County. The County can only be liable for its own policy, customs or practices. *Morton v. City of Cleveland*, 839 F.2d 240, 243-44 (6th Cir. 1988) ("Cleveland cannot be held vicariously liable under § 1983 for damages inflicted by its officers. Rather, the municipality may be required to respond in damages under § 1983 only for its own actions."). Accordingly, plaintiffs' motion for summary judgment on their *Monell* claim (Count V) as against Cuyahoga County is **DENIED**, and defendants' motion for summary judgment on the same is **GRANTED**.

2.      **Seizure in Violation of the Fourth and Fourteenth Amendment**

a.      **Facial Constitutional Challenge to Standing Order**

Plaintiffs contend that the juvenile court's standing order is facially unconstitutional because it authorizes warrantless entries and seizures, and if allowed to stand, reliance on exigent circumstances will become the norm, rather than an exception to the warrant requirement. In order to prevail on their facial challenge, plaintiffs must establish that there is no set of circumstances under which the standing order may be constitutionally applied. *United*

*States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 95 L. Ed. 2d 697 (1987). "In other words, a facial challenge to a statute should fail if the statute has a constitutional application." *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 194 (6th Cir. 1997).

By journal entry dated March 18, 1999 ("standing order"), Administrative Judge John W. Gallagher of the Court of Common Pleas, Cuyahoga County, Juvenile Court division ordered the appointment of all County social workers as officers of the court pursuant to Ohio Rev. Code § 2151.31[3] and the juvenile court rules. (Doc. 125-2.) The standing order provides that social workers have the authority to remove and provide temporary emergency and shelter care for children who are at imminent risk of serious physical or emotional harm. It further provides that in such circumstances, a complaint must be filed no later than the next business day and a hearing held within 72 hours pursuant to Ohio statutory law. Finally, the standing order provides that social workers may request the assistance of law enforcement when carrying out an emergency removal.

In essence, plaintiffs complain that defendants routinely remove children without a warrant based on alleged exigent circumstances. In other words, they claim that the standing

---

[3] The relevant portions of Ohio Rev. Code § 2151.31 provide as follows:

(A) A child may be taken into custody in any of the following ways:
…
(3) By a law enforcement officer or duly authorized officer of the court when any of the following conditions are present:
(a) There are reasonable grounds to believe that the child is suffering from illness or injury and is not receiving proper care, as described in section 2151.03 of the Revised Code, and the child's removal is necessary to prevent immediate or threatened physical or emotional harm;
(b) There are reasonable grounds to believe that the child is in immediate danger from the child's surroundings and that the child's removal is necessary to prevent immediate or threatened physical or emotional harm;
(c) There are reasonable grounds to believe that a parent, guardian, custodian, or other household member of the child's household has abused or neglected another child in the household and to believe that the child is in danger of immediate or threatened physical or emotional harm from that person.
…

Ohio Rev. Code Ann. § 2151.31.

order authorizes defendants to bypass judicial authority and Fourth Amendment warrant requirements by treating every suspected case of abuse or neglect as an emergency.

Plaintiffs' argument is flawed because it is aimed at the County's *application* of the standing order. The standing order authorizes social workers' warrantless removal of children in cases where the social worker believes the child is in imminent danger of abuse. Although, plaintiffs contend that defendants will stretch the definition of exigent circumstances, the face of the standing order is silent as to what circumstances may reasonably be considered to constitute an "imminent risk of serious physical or emotional harm." It is possible, however, to apply the standing order in a way that does not offend the Fourth Amendment. "[C]ourts have recognized that a state may constitutionally remove children threatened with imminent harm when it is justified by emergency circumstances." *Doe v. Kearney*, 329 F.3d 1286, 1293-94 (11th Cir. 2003). *See, e.g., Mabe v. San Bernardino Cnty.*, *Dep't of Pub. Soc. Servs.,* 237 F.3d 1101, 1106-07 (9th Cir. 2001); *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1010-11 (7th Cir. 2000); *Wooley v. City of Baton Rouge*, 211 F.3d 913, 925–26 (5th Cir. 2000); *Tenenbaum v. Williams*, 193 F.3d 581, 604-05 (2d Cir. 1999); *cf. United States v. Bradley*, 922 F.2d 1290, 1293 (6th Cir. 1991)*, overruled on other grounds by United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc) (permitting warrantless search and seizure in criminal cases where exigent circumstances exist). In such circumstances, no warrant or prior judicial involvement is required. *Id.* By definition, the standing order is constitutional.[4] *See Kearney*, 329 F.3d at 1293-94 (rejecting a facial constitutional challenge of a state statute authorizing warrantless removal of children in emergency circumstances because the statute could be applied in a constitutional

---

[4] Plaintiffs' reliance on *O'Donnell v. Brown*, 335 F. Supp. 2d 787 (W.D. Mich. 2004) is misplaced. The court in that case did not hold that the state law at issue was facially unconstitutional as plaintiffs contend. Rather, the court held that while the statute authorized warrantless seizures of children in certain instances, on its face, it did not authorize unconstitutional conduct, including unlawful entry into a home or a warrantless seizure where no exigent circumstances existed. Thus, the court in *O'Donnell* was only concerned with the statute at issue as applied and did not find the statute facially invalid.

manner). Accordingly, plaintiffs' request for summary judgment on their facial constitutional challenge to the standing order (portion of Count II) is **DENIED**, and defendants' motion for summary judgment on this claim is **GRANTED**.

> **b.**     **As Applied Challenge to Removal**

Plaintiffs next seek summary judgment on the issue of whether the removal of Daniel and Katherine from their home pursuant to the juvenile court standing order and the TEC violated the Fourth Amendment.

The Fourth Amendment prohibits "unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the persons or things to be seized." The Fourth Amendment requires that a seizure inside a home be supported by a warrant unless exigent circumstances exist or the officers have some other lawful reason to be inside the property. *See Payton v. New York,* 445 U.S. 573, 590, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S. Ct. 2022, 2039, 29 L. Ed. 2d 564 (1971) ("[N]o amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'").

"The removal of a child from his custodial parents' home is a seizure for Fourth Amendment purposes, which is constitutionally reasonable if it is pursuant to a court order, is supported by probable cause, or is justified by exigent circumstances." *Krantz v. City of Toledo Police Dept.*, 197 F. App'x. 446, 454 (6th Cir. 2006) (citing *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1010 (7th Cir. 2000); *O'Donnell*, 335 F. Supp. 2d at 806-07; *Hernandez v. Foster*, No. CIV.A 09 C 2461, 2010 WL 300361 (N.D. Ill. Jan. 15, 2010)).

It is undisputed that defendants did not seek a court order prior to removing the

Kovacic children from their home. Defendants' argument that their conduct was constitutional because they were acting in accordance with state law is unavailing. Ohio statutes and regulations, including the juvenile court rules and its standing order, on which defendants rely, authorize the removal of children in certain circumstances, but nothing in Ohio law compels or mandates the removal of children without a court order in the absence of exigent circumstances. *Walsh v. Erie Cnty. Dept. of Job & Family Servs.*, 240 F. Supp. 2d 731, 759 (N.D. Ohio 2003) ("Ohio law did not require the defendants to act as they did, and they cannot take refuge behind their misapplication of that law to avoid liability to the plaintiffs.")

Nor does the standing order or the TEC satisfy the warrant requirements of the Fourth Amendment. The standing order is not particularized as to the persons to be seized or the places to be searched, and neither the standing order nor the TEC was issued by a neutral and detached magistrate upon a finding of probable cause. U.S. CONST. AMEND. IV; *Johnson v. United States*, 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436 (1948).

Defendants' argument that this Court is precluded from finding a constitutional violation based on the state court's after-the-fact determination that probable cause existed to justify the removal is equally unavailing. The federal courts are obligated to give a state court judgment the same preclusive effect that courts of the rendering state would give it. *McCormick v. Braverman*, 451 F.3d 382, 397 (6th Cir. 2006). Under Ohio law, collateral estoppel comprises the following four elements: (1) a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (2) the issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; (3) the issue in the present suit must have been identical to the issue involved in the prior suit; and (4) the party against whom estoppel is sought was a party or in privity with a party to the prior action.

*Cashelmara Villas Ltd. P'ship v. DiBenedetto*, 623 N.E.2d 213, 215 (Ohio Ct. App. 1993). In addition, the burden is upon the party seeking to invoke collateral estoppel to prove that all the elements of the doctrine apply. *See Monahan v. Eagle Picher Industries, Inc.,* 486 N.E.2d 1165, 1167-68 (Ohio Ct. App. 1984); *LaBonte v. LaBonte,* 572 N.E.2d 704, 709 (Ohio Ct. App. 1988).

As an initial matter, the Court notes that defendants' brief is devoid of any analysis of the collateral estoppel test as applied to the instant dispute. Instead, defendants conclusively assert that this Court must give preclusive effect to the magistrate's probable cause determination. In any event, the Court finds that defendants have not satisfied their burden because they cannot prove all of the elements of the collateral estoppel test. Specifically, defendants cannot invoke collateral estoppel because they cannot prove the third and fourth elements.

The third prong of Ohio's collateral estoppel test requires that the issue involved in the present litigation must have been identical to the issue involved in the prior suit. Issue preclusion will bar relitigation only when the identical issue was actually decided in the first case, and not simply where an issue could have been decided in the first case. *Goodson v. McDonough Power Equip.,* 443 N.E.2d 978, 987 (Ohio 1983). Here, the magistrate's ruling did not touch upon whether the seizure without a prior court order violated the Fourth Amendment; that is, in absence of a court order, whether exigent circumstances justified the seizure. Instead, the magistrate ruled upon the existence of probable cause to support an emergency custody order issued pursuant to Ohio Rev. Code § 2151.31(E). That section provides that if a judge or referee, by telephone, issues an ex parte emergency order for taking a child into custody, then the court must hold a hearing no later than 72 hours after the order issues to determine if there is probable cause for the order. Thus, under that section, a judge can retroactively find probable cause to

17

support the previously issued ex parte emergency custody order.

Here, there is no question that defendants acted without any court order. Defendants never sought, and the state court never granted an ex parte emergency order; therefore, the magistrate's order cannot be applied retroactively to the seizure because there is no basis to do so. In fact, the magistrate's order is prospective, finding that there "*is*," as opposed to "*was*" probable cause for removal of the children.[5] Moreover, a finding of probable cause for the issuance of an ex parte emergency order for custody is not identical to a finding that exigent circumstances justified the failure to secure an order prior to the seizure. *Cf. United States v. Morgan*, 743 F.2d 1158 (6th Cir. 1984) (holding that existence of probable cause for a warrant cannot excuse failure to secure a warrant prior to entry into home to arrest suspect where there was no exigent circumstances). Consequently, the magistrate never addressed the issue here— whether defendants were justified in executing a seizure without a prior court order and in the absence of exigent circumstances.

Finally, with respect to the fourth element of collateral estoppel under Ohio law, "[i]n order to invoke res judicata, one of the requirements is that the parties to the subsequent action must be identical or in privity with those in the former action." *Kirkhart v. Keiper*, 805 N.E.2d 1089, 1092 (Ohio 2004). There can be no question that the individual defendants here were not *parties* to the custody proceedings in the state court; it was the County, acting as an arm of the state, which brought the custody action against Ms. Kovacic. *See Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Educ.*, 861 N.E.2d 163, 177 (Ohio Ct. App. 2006) ("For the

---

[5] The form used by the magistrate provides for a variety of findings relative to probable cause, from which the magistrate can select.  That portion of the order provides as follows:

Based upon the above testimony and / or stipulations, the Magistrate finds that there (✓) is / (  ) was (  ) was not was [sic] probable cause for removal of the child(ren) pursuant to Revised Code Section (  )2151.31(A)(3)(a), (✓ )2151.31(A)(3)(b), (✓)2151.31(a)(3)(c).

(Doc. No. 121-14.)

purposes of applying collateral estoppel, regardless of which agency or instrumentality is nominally involved, the state is the real party in interest."). Consequently, the individual defendants can only invoke the doctrine of collateral estoppel if they were in privity with the County.

The Ohio courts have recognized that the concept of privity for purposes of res judicata is "somewhat amorphous." *Brown v. Dayton*, 730 N.E.2d 958, 962 (Ohio 2000). "Mutuality, however, exists only if 'the person taking advantage of the judgment would have been bound by it had the result been the opposite. Conversely, a stranger to the prior judgment, being not bound thereby, is not entitled to rely upon its effect'" for *res judicata*." *O'Nesti v. DeBartolo Realty Corp.,* 862 N.E.2d 803, 806 (Ohio 2007).

In this case, there is no indication that there was an identity of interest between the social workers and the State of Ohio such that they would be bound by the State's conduct in the custody proceedings. *See, Abdulsalaam v. Franklin Cnty. Bd. Of Com'rs*, 637 F. Supp. 2d 561, 587 (S.D. Ohio 2009) (finding a social worker is not in privity with county children services agency) ("While it is true that Spires [sic] investigatory notes were important to the course of the case and that Spires assisted in the creation of the complaint, once the complaint had been filed, Spires' role in relation to the litigation became that of a material witness. […] The interests of a caseworker investigating a neglect case and the agency prosecuting the case may easily diverge, especially when, as in this case, the caseworker is accused of acting contrary to agency policy and protocol."); *cf. Potts v. Hill*, 77 F. App'x 330 (6th Cir. 2003) (finding police officers not in privity with state in prior criminal action, thus in subsequent § 1983 civil litigation, the court was not precluded from considering constitutionality of seizure even if state court had already found a constitutional violation); *Wallace v. Mamula*, 30 F.3d 135  (6th Cir. 1994) (finding no privity

between police officer and state in criminal case thus officer was not precluded). For the foregoing reasons, the Court rejects defendants' collateral estoppel argument.

In the absence of a warrant supported by probable cause, the key dispute becomes whether exigent circumstances supported defendants' seizure of the children. "[I]t is core Fourth Amendment doctrine that a seizure without consent or a warrant is [not] a 'reasonable' seizure… [unless] it is justified by 'exigent circumstances.'" *Tenenbaum,* 193 F.3d at 604. Exigent circumstances exist only where real, immediate and serious consequences would certainly occur were a police officer (or social worker) to postpone action to get a warrant. *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 997 (6th Cir. 1994). "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Mincey v. Arizona*, 437 U.S. 385, 392-93, 98 S. Ct. 2408, 2413, 57 L. Ed. 2d 290 (1978) (citing *Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963) (Burger, J.)); *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996) ("[T]he cases finding exigent circumstances uniformly cite the need for prompt action by government personnel, and conclude that delay to secure a warrant would be unacceptable under the circumstances.").

The Sixth Circuit has held that the public official must establish an exception to the warrant requirement by "clear and positive proof." *United States v. Jones,* 641 F.2d 425, 429 (6th Cir. 1981). The test is an objective one: the public official must be able to point to "specific and articulable facts" at "the moment of the warrantless entry" that would lead a reasonable, experienced officer to believe that someone inside the dwelling required immediate assistance. *United States v. Morgan,* 743 F.2d 1158, 1162, 1163 (6th Cir. 1984). To satisfy her "heavy burden" to establish exigent circumstances, the official must do more than demonstrate "the mere possibility" that an exigency exists. *United States v. Radka,* 904 F.2d 357, 362 (6th Cir. 1990);

*see also Jones,* 641 F.2d at 428-429.

"Whether exigent circumstances exist is generally an issue for a jury. *Walters v. Stafford*, 317 F. App'x. 479, 489 (6th Cir. 2009) (citing *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992)). However, where "the underlying facts are essentially undisputed, and where a finder of fact could reach but one conclusion as to the existence of exigent circumstances, the issue may be decided by the trial court as a matter of law." *Id*.

In 2007, this Court denied defendants' summary judgment on plaintiffs' unlawful entry claim because the evidence did not demonstrate an objectively reasonable basis to support defendants' conclusion that exigent circumstances justified a warrantless entry. As noted in the Court's prior opinion, defendants concede that prior to March 26, 2002 meeting, CCDCFS employees did not intend to remove Daniel and Katherine from their home. In fact, all of the incidents relied upon by defendants to establish exigent circumstances were known to defendants for some time, including the single documented act of violence by Ms. Kovacic against her children and the incident in which Daniel stabbed his mother with a pen. The only additional information gained at the March 26, 2002 meeting were the subjective opinions and speculations offered by the police officers and by Nancy's ex-husband's family, none of which tended to indicate that Nancy had physically abused or threatened to abuse her children. Finally, defendants offered no evidence that there was no time to obtain a court order authorizing the seizure of the children. In short, defendants have failed to show that real immediate and serious consequences would certainly occur were they to have delayed their actions long enough to seek a court order or warrant. No reasonable juror could find that Ms. Kovacic posed an imminent threat of physical harm to her children. Accordingly, plaintiffs' motion for summary judgment on their unlawful removal claim (portion of Count II) is **GRANTED**, and defendant's motion for

summary judgment on this claim is **DENIED**.

3.      **Fourteenth Amendment Due Process Claims**

    a.      **Procedural Due Process**

Plaintiffs' next contention is that they are entitled to summary judgment on their procedural due process claim because defendants deprived them of a constitutionally protected liberty interest (i.e., the right to family integrity) when they removed them from their family home without due process. A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *See Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989); *Pusey v. City of Youngstown,* 11 F.3d 652, 656 (6th Cir.1993). "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens,* 411 F.3d 697, 708 (6th Cir. 2005). Thus, to succeed on a procedural due process claim, plaintiffs must demonstrate both a deprivation of a constitutionally protected property or liberty interest, and that the deprivation occurred without due process of law. *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990); *Kennedy v. City of Cincinnati,* 595 F.3d 327, 334 (6th Cir. 2010.) "Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest will the court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated his rights to due process." *Warren,* 411 F.3d at 708 (citing *Hamilton v. Myers,* 281 F.3d 520, 529 (6th Cir. 2002)).

Thus, in order to decide whether plaintiffs merit summary judgment on their procedural due process claim, the Court must begin by determining whether plaintiffs suffered a

deprivation of the constitutionally protected right to family integrity. Defendants argue that children do not possess a constitutionally protected interest with respect to a temporary deprivation to protect their safety, nor do they have a constitutional right to a pre-deprivation hearing before being taken into protective care. *Reno v. Flores*, 507 U.S. 292, 117 S. Ct. 1439 (1993). Defendants assert that, "The constitutional rights of children, if any, must be subservient to that of the state which seeks to protect them." (Doc. 125 at 12.)

Defendants' reliance on the *Flores* decision is misplaced. In *Flores*, the Supreme Court held that the custody of juveniles does not violate substantive due process, nor does a child have a substantive right to a hearing on placement when the child is an unaccompanied juvenile alien that has *no parent, close relative, or legal guardian* capable of caring for the child, the government does not intend to punish the child, and conditions of governmental custody are decent and humane. 117 S. Ct. at 1447-48. The Court noted that the claims of the alien juveniles were "novel" and not so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Id.*

The *Flores* case has no application in the context of removal of children *from their parents or custodial guardians*. The Kovacic children were not detained as aliens suspected of being deportable, a class that can be detained, and over which the government has broad discretion regarding detention. Instead, the defendants removed the Kovacic children from the custody and control of their natural parent. The discretion granted a state agent within the context of removal of children from their natural parents is not nearly as broad as that of the Attorney General over aliens. *Compare Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388 (1982), *with Flores*, 117 S. Ct. at 1447-49.

In this context, the Supreme Court has recognized the right to family integrity as

a fundamental liberty interest protected by the Fourteenth Amendment. *See, e.g., Santosky*, 455 U.S. at 753. Courts have held that this right extends to both parents *and* their children. *Id.* at 760 ("[U]ntil the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of the natural relationship."); *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000) ("Parents and children have a well-elaborated constitutional right to live together without governmental interference."); *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1020 (7th Cir. 2000) ("Similarly, a child's right to be nurtured by his parents cannot be denied without an opportunity to be heard in a meaningful way."); *Wooley*, 211 F.3d at 923 ("a child's right to family integrity is concomitant to that of a parent"); *J.B. v. Washington Cnty.*, 127 F.3d 919, 925 (10th Cir. 1997) (holding that a child "also enjoys a liberty interest requiring that procedural due process accompany her confinement"); *Cf. A.C. v. Mattingly*, No. 05cv2986, 2007 WL 894268, at *5 (S.D. N.Y. March 20, 2007) ("[I]nfant plaintiffs possess a liberty interest in preserving the integrity of their kinship foster family."). The Court finds, therefore, that the Kovacic children have met their burden of demonstrating a constitutionally protected interest in their family integrity.

The second step in the procedural due process analysis requires a determination of whether defendants provided plaintiffs constitutionally adequate process before depriving them of their right to familial integrity. "The law recognizes the state's compelling interest in protecting children from physical abuse and its right to interfere with family relationships when necessary so long as it complies with procedural due process requirements." *O'Donnell*, 335 F. Supp. 2d at 810; *Edison v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) ("[S]tate intervention in the relationship between a parent and child must be accomplished by procedures meeting the requisites of the Due Process Clause.").

To determine what process is constitutionally due, the court looks to three somewhat flexible demands of procedural due process: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the value of adding or substituting different safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that additional or different procedures would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976).

Plaintiffs contend that they received *no process* prior to defendants' removal of them from their family home. They argue that, at a minimum, due process required an investigation by the County defendants, notice and a pre-deprivation hearing resulting in a court order prior to removal of the children.

Defendants contend that plaintiffs received all the process that was due pursuant to Ohio's comprehensive statutory scheme governing removal of children, including a probable cause hearing within 72 hours of the removal and the appointment of a guardian ad litem to protect their interests. *Lesher v. Lavrich*, 632 F. Supp. 77 (N.D. Ohio 1984). Defendants argue that no pre-deprivation hearing was required in this case because "[c]hildren simply do not have a constitutional right to a pre-deprivation hearing before being taken into protective care." Further, they assert that plaintiffs are required to plead and prove the inadequacies of the state procedures. *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983).

"Before a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, 'except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *Board of Regents v. Roth,* 408 U.S. 564, 570 n. 7, 92 S. Ct. 2701, 2705 n. 7, 33 L. Ed. 2d 548

(1972) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S. Ct. 780, 786, 28 L. Ed. 2d 113 (1971)). "However, due process does not require a formal and full-blown adversary hearing in every case." *Doe v. Staples,* 706 F.2d 985, 990 (6th Cir. 1983). The hearing required is only one "appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950). "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie,* 401 U.S. at 378, 91 S. Ct. at 786.

At a minimum, in the child removal context, due process requires written notice and a hearing unless exigent circumstances are present. *O'Donnell,* 335 F. Supp. 2d at 812, n.13 (citing *Staples*, 706 F.2d at 986-87). "Temporary deprivations of physical custody are no exception – they also require a hearing within a reasonable time." *Canter*, 2008 WL 1925048, at *6 (citing *Smith v. Williams-Ash*, 173 F. App'x 363, 366 (6th Cir. 2005)). Ohio Rev. Code § 2151.31 parallels the constitutional requirements and provides for the removal of a child by state officials without notice or hearing where exigent circumstances dictate immediate removal to prevent imminent harm to the child. The statute further provides that the juvenile court shall hold a probable cause hearing within 72 hours after the removal.

This Court has already determined that the circumstances in this case were not exigent. Further, as discussed above, defendants presented no evidence to show that it would have been impossible to seek a court order prior to the removal. Under these circumstances, the post-deprivation hearing held within 72 hours after the removal is insufficient to absolve the earlier process defects where pre-deprivation remedies were not "impossible." *O'Donnell*, 335 F. Supp. 2d at 813. There being no exigent circumstances, defendants could not dispense with the constitutionally required pre-deprivation process due. In short, defendants cannot shield

themselves from liability with post-deprivation procedures afforded under state law.

The *Lesher* case, cited by defendants, is distinguishable from the circumstances presented here. In *Lesher*, the court concluded that the process afforded a mother and stepfather during a removal proceeding under Ohio statutory law was sufficient, and the defendants' compliance with those procedures did not deprive plaintiffs of their procedural due process rights. 632 F. Supp. at 83. In that case, however, the social worker "thoroughly investigated" the matter before filing the complaints, including interviewing the children and their father and reviewing medical reports, and the social worker sought an emergency custody order prior to the removal. The social worker also provided the mother and stepfather with prompt notice prior to the removal. In contrast, here, plaintiffs allege, and the uncontradicted facts show, that defendants did not investigate the allegations made during the March 26, 2002 meeting. Defendants did not attempt to authenticate any of the information provided to them by either the Kovacic family members or the police officers. Further, there is no question that defendants did not seek prior judicial approval before seizing the Kovacic children. Thus, it cannot be said that, pursuant to *Lesher*, these plaintiffs received adequate process.

Finally, the rule announced in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), which holds that actions for money damages without due process of law cannot be brought under 42 U.S.C. § 1983 if there are adequate remedies at state law, has no application in this case. *See also Parratt v. Taylor*, 451 U.S. 527 (1981)*, overruled on other grounds,* 474 U.S. 327 (1986)*.* The hallmark of the rule announced in *Parratt* and *Vicory* is "the impossibility or impracticability of providing pre-deprivation process combined with provisions for adequate post-deprivation process." *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Furthermore, in *Mackey v. Dyke*, 29 F.3d 1086 (6th Cir. 1994), the Sixth Circuit explained:

> Parratt does not require dismissal of all § 1983 actions where the state provides a post-deprivation process for remedying the alleged deprivation. The Supreme Court explained the limitations on Parratt in *Zinermon v. Burch*, 494 U.S. 113 (1990), stating that the Parratt doctrine will defeat a procedural due process claim only if: (1) the deprivation was unpredictable or "random"; (2) pre-deprivation process is impossible; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty. 494 U.S. at 136-39. […]The controlling inquiry is whether the state was in a position to provide for pre-deprivation process. *Hudson v. Palmer*, 468 U.S. 517, 534 (1984).

*Mackey*, 29 F.3d at 1093 (parallel citations omitted). Therefore, Parratt is "clearly inapplicable 'where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized conduct.'" *Watts v. Burkhart*, 854 F.2d 839, 843 (6th Cir. 1988) (quoting *Hudson*, 468 U.S. at 532). See also *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 102 S. Ct. 1148, 71 L .Ed. 2d 265 (1982); *Harris*, 20 F.3d at 1402; *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991).

In determining whether conduct is "random and unauthorized," courts consider whether the conduct was predictable. *See, e.g., Hamlin v. Vaudenberg,* 95 F.3d 580, 584 (7th Cir. 1996). The loss of property by tortious conduct in accordance with an official custom or policy is not considered random and unauthorized because it is the known custom or policy that allows the tortious conduct to take place. *See Wilson v. Civil Town of Clayton, Ind.,* 839 F.2d 375, 378-79 (7th Cir. 1988).

In this case, defendants' took action pursuant to state law, the juvenile court rules, and the juvenile court standing order authorizing removal of children in emergency circumstances and, therefore, their conduct was not unpredictable or random. Moreover, the Court has already held that defendants have failed to show that pre-deprivation process was impossible. In short, "the gravamen of [plaintiffs'] complaint is that the [county] procedure itself deprived [plaintiffs] of [their liberty interest in family integrity] without due process." *Macene*,

951 F.2d a 706. Therefore, the Court concludes that this case does not fall within the parameters of the *Parratt* rule.

When taking the facts in the light most favorable to defendants, no genuine issue of material fact remains that defendants removed plaintiffs from their home without exigent circumstances and without due process adequate to protect their constitutional right to family integrity. Accordingly, plaintiffs' motion for summary judgment on their procedural due process claim (portion of Count IV) is **GRANTED** as far as it alleges denial of notice and a hearing prior to the seizure, and defendants' motion on this claim is **DENIED**. However, plaintiffs' motion for summary judgment on their claim that defendant Ponstingle violated their procedural due process rights when she allegedly made false statements to the juvenile court (remainder of Count IV) is **DENIED**. As discussed *infra* in Section III, C, 6, defendant Ponstingle is entitled to absolute immunity with regard to those statements and is thus **GRANTED** summary judgment with respect to plaintiffs' claim that she made false statements to the juvenile court.

b. **Substantive Due Process**

Substantive due process "serves as a vehicle to limit various aspects of potentially oppressive government action." *Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir. 1996); *see Daniels v. Williams,* 474 U.S. 327, 331, 106 S. Ct. 662, 664-65, 88 L. Ed. 2d 662 (1986). Substantive due process rights bar "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986).

"To the extent that [plaintiffs'] claim is premised on [their] seizure from [their] home, however, it cannot succeed because, as the Supreme Court has recently reiterated, substantive due process should not be called upon when a specific constitutional provision

protects the right allegedly infringed upon." *Brokaw*, 235 F.3d at 1017 (citing *United States v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)). As to plaintiffs' initial removal, the Fourth Amendment specifically addresses a seizure, thus this claim should be considered under the Fourth Amendment, not under the rubric of substantive due process.

Nevertheless, plaintiffs also assert that defendants violated their constitutional rights during the entire ten-month period of separation from their mother. This forced separation implicates substantive due process, or more specifically, plaintiffs' constitutional right to family integrity.

The parties dispute the appropriate standard by which to evaluate a claimed violation of substantive due process. In the past, the Sixth Circuit has used both the "shock the conscience" standard and the deprivation of fundamental rights theory to assess substantive due process claims against social workers. *See Pittman v. Cuyahoga Cnty. Dept. of Children & Family Servs.*, 640 F.3d 716, 728, n.6 (6th Cir. 2011) (collecting cases).[6] Defendants assert that the "shocks the conscience" standard applies in this case. Plaintiffs counter that because they claim a substantive due process violation based on the alleged deprivation of their fundamental liberty interest in family integrity, not on allegedly conscience-shocking conduct, the Court must apply the strict scrutiny standard.

Plaintiffs are wrong, as the Supreme Court clarified in *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998), that the shocks-the-conscience test, first

---

[6] *Compare Bartell v. Lohiser*, 215 F.3d 550, 557–59 (6th Cir. 2000) (applying strict scrutiny to mother's substantive due process claim based on state child services workers' role in terminating her custody of her son), *with Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635–36 (6th Cir. 2007) (stating that father had to allege " 'conduct intended to injure in some way unjustifiable by any government interest' and that is 'conscience-shocking' in nature" to state a substantive due process claim based on the removal of his daughters from his custody (quoting *Mitchell v. McNeil*, 487 F.3d 374, 377 (6th Cir.2007))), *and Smith v. Williams–Ash*, 173 F. App'x 363, 365, 367 (6th Cir. 2005) (applying the "shock the conscience" standard to plaintiffs' claims that a social worker violated their substantive due process rights by "thwarting [plaintiffs'] attempts to recover the[ir] children" after removal and "not providing a probable cause hearing to determine the children's placement").

articulated in *Rochin v. California,* 342 U.S. 165, 72 S. Ct. 205, 96 L. Ed. 183 (1952), governs *all* substantive due process claims based on executive, as opposed to legislative, action. 523 U.S. at 845-46, 118 S. Ct. 1708; *Ferguson v. Van Horne,* 5:09CV2055, 2011 WL 251116, at *6 (N.D. Ohio Jan. 26, 2011) ("When, as in the present case, a plaintiff complains of abusive executive action, this 'conscience shocking' test determines liability, rather than the traditional strict scrutiny standard used to measure the constitutionality of legislative acts.") (quoting *Christensen v. Cnty. of Boone,* 483 F.3d 454, 462 n. 2 (7th Cir. 2007) (citing *Lewis,* 523 U.S. at 846-47). See also, *Martinez v. Cui*, 608 F.3d 54, 64 (1st Cir. 2010); *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347,* 591 F.3d 624, 634 (8th Cir. 2010); *Ellis ex rel. Estate of Ellis v. Ogden City,* 589 F.3d 1099, 1101 (10th Cir. 2009); *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.,* 587 F.3d 176, 190 (3d Cir. 2009); *Wolf v. Fauquier County Bd. of Supervisors,* 555 F.3d 311, 323 (4th Cir. 2009); *Davis v. Carter,* 555 F.3d 979, 982 (11th Cir. 2009); *Benzman v. Whitman,* 523 F.3d 119, 126 (2d Cir. 2008). *But see Pittman*, 640 F.3d at 728(applying the strict scrutiny standard but relying on pre-*Lewis* case law that divided substantive due process claims against executive agents into two types, those based on violations of particular constitutional guarantees and those that shock the conscience); *Pusey v. City of Youngstown,* 11 F.3d 652, 656 (6th Cir. 1993), *cert. denied,* 512 U.S. 1237, 114 S. Ct. 2742, 129 L. Ed. 2d 862 (1994) ("Substantive due process claims [are] loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that "shock the conscience."); *see also Mansfield Apartment Owners Ass'n v. City of Mansfield,* 988 F.2d 1469, 1474 (6th Cir. 1993).

Defendants argue that, even if plaintiffs have a fundamental liberty interest in family integrity, there are material issues of fact as to whether defendants' conduct "shocks the conscience" or otherwise violated plaintiffs' constitutional rights. Plaintiffs cling to their strict

scrutiny argument and assert that, although the government has a compelling interest in protecting children from abuse or neglect, it has no interest in protecting children from their parents in the absence of some definite and articulable evidence supporting a reasonable suspicion that a child has been abused or is imminent danger of abuse. *Brokaw*, 235 F.3d at 1019. Moreover, they contend that the County's interest was not narrowly tailored because there were many less restrictive means of addressing the government's purported interest in protecting the children.

No matter what standard the Court applies, however, defendants have not violated plaintiffs' substantive due process rights. At most, defendants are responsible only for the three days of separation that passed between the removal and the first juvenile court hearing. As outlined below, however, such a temporary deprivation does not rise to a violation of substantive due process. It was the juvenile court, not the County and its employees, which perpetrated the ten-month deprivation of plaintiffs' right to family integrity, if any. *Pittman*,640 F.3d at 729.

In *Pittman*, a father alleged that a county social worker, Hurry, mishandled the caregiver approval process, made detrimental misrepresentation about him in internal proceedings regarding the child, and as a result, the agency determined that he was an unfit caregiver, which resulted in the court's failure to award or consider him for placement or custody. The Sixth Circuit Court of Appeals held that the social worker was not liable for violating the father's substantive due process rights because:

> [E]ven if Hurry's actions led CCDCFS to conclude that he was an unfit caregiver, this did not result in the failure to award or "to even consider" Pittman for placement or custody. Under Ohio law, the juvenile court decides whether to grant permanent custody to CCDCFS or to grant legal custody to a relative. *See* Ohio Rev. Code Ann. §§ 2151.353(A)(3), 2151.414(A)(1). Similarly, though a CCDCFS caseworker makes an initial determination as to the appropriate placement for a child in CCDCFS custody, that determination is not binding on interested parties, including the parents, until the juvenile court approves and

32

journalizes the child's case plan; if a parent disagrees with the CCDCFS case plan, his recourse is with the juvenile court, which will hear "evidence on the contents of the case plan" and, "based upon [that] evidence ... and the best interest of the child, shall determine the contents of the case plan." *Id.* § 2151.412(D). In contrast, CCDCFS, like Pittman, is merely a party to the juvenile court proceedings, tasked with presenting to the juvenile court its recommendation as to the appropriate course of action in a particular case. Because the juvenile court has the ultimate decision making power with respect to placement and custody, it alone could deprive Pittman of his fundamental right. Therefore, Hurry's conduct did not violate Pittman's substantive due process rights.

*Pittman*, 640 F.3d at 729 (alteration in original).

Here, although defendants made the initial determination to remove the Kovacic children temporarily from their home that determination was not binding on the interested parties, including Ms. Kovacic, her children or CCDCFS. On March 29, 2002, the juvenile court granted emergency custody of the Kovacic children to the County. (Doc. 121-14.) The juvenile court, and not defendants, had the ultimate decision-making power with respect to the placement and custody of the Kovacic children. Accordingly, the juvenile court alone could deprive plaintiffs of their fundamental right during the claimed ten-month period.

As to the three days of separation between the removal and the first juvenile court proceeding, numerous courts have held that such a temporary deprivation does not violate substantive due process rights, even if plaintiffs had been given all the procedural protections to which they were entitled. *See, e.g. Tenenbaum*, 193 F.3d at 600 (holding that removal of child for several hours, which did not result in wholesale relinquishment of parental right to raise child, not severe enough to constitute a violation of parents' substantive due process rights even in the absence of any judicial proceedings); *T.C. v. Mattingly*, No. 07-CV-1790, 2010 WL 3824119, at *10 (E.D. N.Y. Sept. 23, 2010) (holding that four-day removal did not rise to level of a substantive due process violation, at least where the purpose of the removal is to keep the child safe during investigation and court confirmation of the basis for removal.") (internal

citations omitted); *accord V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 367 (S.D. N.Y. 2010).

Moreover, there is no evidence that defendants acted with willfulness or intent to adversely interfere or affect the familial relationship between plaintiffs and their mother. "Absent such evidence […] no genuine issue of material fact exists as to plaintiffs' substantive due process claims." *Washington Cnty*., 127 F.3d at 927-28 (holding that in absence of allegation that officials were motivated by any other purpose apart from investigation, there can be no violation of substantive due process); *see also Walsh*, 240 F. Supp. 2d. at 757 (granting summary judgment to defendant where plaintiffs failed to show defendants intentionally acted to diminish or deprive plaintiffs' right to family integrity). Therefore, defendants' conduct did not violate plaintiffs' substantive due process rights. Accordingly, plaintiffs' motion for summary judgment on their substantive due process claim (Count III) is **DENIED**, and defendants' motion on this claim is **GRANTED**.

## 4.    County Policy and Practice

A governmental entity may not be held liable under 42 U.S.C. § 1983 for an employee's conduct on the basis of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Rather, plaintiffs must show that the government entity itself is the wrongdoer. *Collins v. City of Harker Heights,* 503 U.S. 115, 122 (1992). In order to establish governmental liability, plaintiffs must demonstrate that an officially executed policy, or the tolerance of a custom, led to or caused the deprivation of a constitutionally protected right. *Collins,* 503 U.S. at 122. Vicarious liability attaches to the municipality only when it causes the constitutional violation at issue, or in other words, plaintiffs must identify the policy or custom of the municipality and show that they incurred a particular injury because of the execution of that policy or custom. *Doe v. Claiborne Cnty. Of Educ.*,

34

103 F.3d 495 at507-08 (6th Cir. 1996).

The term "policy" generally "implies a course of action consciously chosen from among various alternatives." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). A policy reflects "a deliberate choice to follow a course of action ... made among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). A "custom" for purposes of *Monell* liability must be "so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691. In turn, the concept of "law" includes "deeply embedded traditional ways of carrying out state policy." *Nashville, C. & S.L. Ry. v. Browning*, 310 U.S. 362, 369 (1940). In short, a "custom" is a "legal institution that is permanent and established" but not memorialized by written law. *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993).

Plaintiffs argue that the County had a policy of relying on a non-particularized standing order to justify warrantless entry and removal of children, and that the County relied on law enforcement to facilitate illegal entry into homes and seizures without a warrant. Plaintiffs contend this policy was the moving force behind the violation of their constitutional rights. Plaintiffs assert that the pattern of events preceding the removal of the Kovacic children demonstrates the application of nebulous standards and indifference to the rights of individuals and constitutionally required procedures. Plaintiffs again cite the law-of-the-case doctrine and the Court's earlier holding that the County presented no evidence that it could not have acquired a court order prior to the removal. Plaintiffs argue that bypassing judicial authority is the norm rather than the exception.

The County counters that plaintiffs have not demonstrated a policy or practice

existed that led to the violation of their rights. The County asserts that the policy at issue, the standing order, is that of the juvenile court and not CCDFCS, and that the juvenile court determined that probable cause existed to warrant the removal, therefore, the juvenile court is the proper party to this action, not CCDFCS. Alternatively, the County argues that the removal was a discretionary act and was not actionable as a policy, custom or practice, and that the only issue is whether the facts warranted the agents' actions.

First, as previously held by this Court, it is clear that the County had a policy of obtaining TEC orders to justify the removal of children at risk from imminent harm without a court order and seeking police assistance in effecting warrantless removals and entries. (Doc. 88 at 27.) The County's depiction of the policy as that of the juvenile court is inapt. The standing order may have authorized removal of children in an emergency, but it was CCDCFS agents who made the imminent harm determination, who signed the TEC order, and who actually removed the children with the assistance of local law enforcement officers. Defendants contend, however, that any mistake made as to the existence of exigent circumstances is not imputable to the County. The Court agrees.

While the County's employees may have erred in the way the removed plaintiffs, that is not enough to create liability on the part of the County itself. *Dick v. Watonwan Cnty.*, 738 F.2d 939, 941 (8th Cir. 1984). In *Watonwan*, the court held that the conduct of social workers in initiating commitment proceedings against a couple based on unverified information provided by the couple's minor child was not in accordance with a county policy. *Id.* at 942. The court found that the policy granted discretion to agents to decide if facts warranted taking a case to the prosecutor and did not affirmatively sanction reliance on uncorroborated accusations. *Id.*

Similarly, here the County's policy was simply that its social workers use their

own discretion to decide if the facts presented were serious enough to justify seeking a TEC order and emergency removal. As in *Watonwan*, there is no evidence of any policy, written or unwritten, making specific reference to reliance on unsubstantiated allegations. "It was simply up to individual officers of the [County] to use their best judgment, depending on all the facts and circumstances of a given situation," whether to seek emergency removal. *Id*. Using the rationale from the Eighth Circuit in *Watonwan*,

> This policy was broad enough to allow the error of judgment that occurred here, but it is not equivalent of the [County's] having given official sanction to [...] uncorroborated accusations [...].The [County] might have chosen to adopt more detailed guidelines, and such rules might have averted the mistake that was made in this case, but the [County's] decision to rely on its employees' judgment is certainly not unconstitutional in and of itself, especially in an area where so many diverse fact situations will inevitably present themselves, and in which the exercise of particularized judgment is so important.
>
> Here, [County] employees made a decision that a certain state of facts was sufficient, and that decision turned out to be wrong. That is not the same as an official [county] policy. "The first 'isolated incident' [is] not enough to establish a policy or custom." *Sanders v. St. Louis County,* 724 F.2d 665, 667 (8th Cir. 1983) (per curiam). *See also Languirand v. Hayden,* 717 F.2d 220, 229 (5th Cir. 1983) (an isolated incident where an inadequately trained police officer was allowed to go on patrol does not constitute municipal policy or custom), *cert. denied,* 467 U.S. 1215, 104 S. Ct. 2656, 81 L. Ed. 2d 363 (1984).

*Watonwan*, 738 F.2d at 942.

In this case, there is no evidence that the County had a policy or custom of tolerating federal rights violations. The policy of allowing social workers, as duly appointed officers of the juvenile court, to make a determination, based on all the facts and circumstances of an individual case, whether exigent circumstances support a warrantless removal, is not a facially unconstitutional policy. *See* Section III, B, a, 2 *supra. See also Wright v. City of Canton, Ohio*, 138 F. Supp. 2d 955, 965-66 (N.D. Ohio 2001) (holding a municipal policy may facially violate constitutional rights by depriving a person of his constitutional rights, by directing a

municipal employee to violate the Constitution, and by ratifying a municipal employee's unconstitutional acts). The County policy in and of itself does not deprive constitutional rights and does not direct social workers to violate the Constitution, nor has the County ratified the unconstitutional conduct in this case.

The policy is not the moving force behind any of the constitutional violations at issue here because it leaves social workers to exercise their own discretion and does not affirmatively sanction the failure to investigate, reliance on uncorroborated allegations, or warrantless removals in the absence of exigent circumstances. A plaintiff cannot establish a municipal policy or custom by one instance of misconduct. *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005). Therefore, a claim based upon the execution of this policy fails to state facts sufficient to hold the County liable. Accordingly, plaintiffs' motion for summary judgment on their *Monell* municipal liability claim (Count V) against CCDCFS is **DENIED**, and defendants' motion for summary judgment on this claim is **GRANTED**.

**C.      Defendants' Motion for Summary Judgment**

**1.      Motion of Defendant Gaylord**

Defendants argue that defendant Pamela Gaylord is entitled to summary judgment because she was not present and did not participate in the March 2002 events that led to the instant litigation. In fact, in plaintiffs' response to defendants' 2006 motion for summary judgment (Doc. 42), plaintiffs assert that the decision to remove the Kovacic children was made by Patty Campbell, Pam Cameron, and Vicki Csornok after consulting then CCDCFS director James McCafferty. (Doc. 67 at 13, 25.) Plaintiffs have offered no response in opposition to this argument, nor have they dismissed defendant Gaylord as a defendant. Plaintiffs have failed to point out specific facts in the record as it has been established which create a genuine issue of

38

material fact with respect to defendant Gaylord's lack of participation. Accordingly, defendants' motion is **GRANTED**, and the Court hereby dismisses with prejudice all claims against defendant Pamela Gaylord.

**2.      Absolute Immunity**

In their 2006 motion for summary judgment (Doc. 42), defendants contended that defendant Ponstingle was entitled to absolute immunity from plaintiffs' fourth amendment claim stemming from her involvement in the warrantless *entry* into the Kovacic's home. In this regard, this Court ruled that,

> The CCDCFS' decision to initiate custody proceedings against Nancy was intimately associated with the judicial phase of juvenile proceedings, and was protected by absolute immunity. *See e.g., Rippy* at 421-22. Similarly, the decision to pursue a TEC Order to effectuate the emergency removal of the Kovacic children was also judicial in nature. However, defendant Ponstingle's involvement in the removal itself, including her role in the warrantless entry into the Kovacic's home, was not. *See e.g., O'Donnell*, 335 F. Supp. 2d at 827. As such, defendant Ponstingle is not entitled to absolute immunity.

(Doc. 85 at 28.) Because this Court previously ruled that it only retained jurisdiction over the claims associated with the warrantless entry, it has yet to address the applicability of absolute immunity to claims related to the *seizure* of the Kovacic children, including plaintiffs' Fourth Amendment and Procedural Due Process claims.

Defendants argue that each of the individual defendants is entitled to absolute immunity from suit on these remaining claims. Defendants contend that their removal of the Kovacic children was pursuant to the authority conferred on them by the standing order of the juvenile court, and thus, as "officers of the court," they are entitled to absolute immunity for their participation in the decision to remove and the removal of the children. Next, defendants assert that each of the individual defendants, with the exception of Kutcher, are immune from claims related to their decision to file a complaint and initiate proceedings in the juvenile court.

Additionally, defendants assert that defendant Ponstingle's role as both the affiant for the complaint and as a witness before the juvenile court entitles her to absolute immunity from claims based upon her allegedly false statements and testimony.

"Under certain circumstances social workers are entitled to absolute immunity." *Pittman*, 640 F.3d at 724 (quoting *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000)). Social workers receive absolute immunity when they engage in conduct intimately associated with the judicial phase of the proceedings. *Rippy v. Hattaway*, 270 F.3d 416, 421-22 (6th Cir. 2001). Thus, absolute immunity protects acts that are judicial or prosecutorial in nature and performed by or related to a general function normally performed by an adjudicator. *Dean v. Byerley*, 354 F.3d 540, 556 (6th Cir. 2004). *See also*, *Mabe*, 237 F.3d at 1106 ("It is well settled that the immunity to which a public official is entitled depends not on the official's title or agency, but on the nature of the function, that the person was performing when taking the actions that provoked the lawsuit.") (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)).

As the Supreme Court has explained, it is "the nature of the function performed, not the identity of the actor who performed it, [which] inform[s] [the court's] immunity analysis." *Forrester v. White,* 484 U.S. 219, 229, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988) (holding that judges do not enjoy absolute immunity when performing administrative, legislative, or executive functions). However, "it is not sufficient that a social worker was an integral part of the judicial process at *other* stages in the proceedings." *Kolley v. Adult Protective Servs.*, No. 10-cv-11916, 2011 WL 1298802, at *23 (E.D. Mich. March 31, 2011) (quoting *Halloway*, 220 F.3d at 777) (emphasis added). The court must examine the particular conduct at issue to determine whether the social worker was functioning as a legal advocate or in some other capacity. *Id.*

Under this "functional approach" to absolute immunity, the Sixth Circuit has held

that social workers are entitled to absolute immunity from liability when they initiate proceedings related to child welfare, including the filing of abuse petitions and complaints seeking custody. *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989). This absolute immunity extends to the testimony, recommendations, and investigations of social workers given in court proceedings concerning the best interests of a child. *Pittman,* 640 F.3d at 725 (citing *Holloway*, 220 F.3d at 776) ("testifying under oath is conduct within social workers capacity as legal advocates") (internal quotation marks omitted).

 Here, the individual defendants' decisions to initiate custody proceedings, including the filing of a complaint with the juvenile court and seeking a TEC order were intimately associated with the judicial phase of the juvenile proceedings and are protected by absolute immunity. *See e.g., Rippy*, 270 F.3dat 421-22. Similarly, defendant Ponstingle's testimony before the juvenile court entitles her to absolute immunity from claims related thereto. *Holloway*, 220 F.3d at 776. "Whether [Ponstingle] made intentional misrepresentations to the juvenile court in the complaint and affidavits does not affect the conclusion that she is entitled to absolute immunity." As the Sixth Circuit recently held,

> [P]rosecutorial immunity applies "so long as the general nature of the action in question is part of the normal duties of a prosecutor," even when that immunity "bar[s] § 1983 suits arising out of even unquestionably illegal or improper conduct by the prosecutor." *Cady v. Arenac Cnty.,* 574 F.3d 334, 340 (6th Cir. 2009). Pursuant to this rule, prosecutors do not forfeit their absolute immunity when they knowingly make false statements while advocating before the court: "Like witnesses, prosecutors and other lawyers were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses." *Burns v. Reed,* 500 U.S. 478, 489–90, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991). Because absolute immunity for social workers is akin to absolute immunity for prosecutors, the same protection must apply here, no matter how undesirable the results. In the words of Chief Judge Learned Hand, absolute immunity represents "a balance between ... evils"; "[I]t has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to

> subject those who try to do their duty to the constant dread of retaliation."
> *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949), *quoted in Imbler,* 424 U.S.
> at 428, 96 S. Ct. 984.

*Pittman*, 640 F.3d at 725-26 (alteration in original). *But see*, *Spurlock v. Thompson*, 330 F.3d

791, 798 (6th Cir. 2003) ("A prosecutor is not entitled to absolute immunity for statements made

in an affidavit supporting application for arrest warrant.") (citing *Kalina v. Fletcher,* 522 U.S.

118, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997) (holding prosecutor did not act as an advocate

when personally swearing to the truth of a certification in support of probable cause)).[7]

> Absolute immunity does not apply, however, to those functions of a social worker

that "are analogous to functions performed by investigators, police officers, or complaining

witnesses, not prosecutors." *Brown v. Montana*, 442 F. Supp. 2d 982, 989 (D. Mont. 2006).

Thus, "[t]he investigation of a social worker that *precedes* the filing of a complaint or petition is

not necessarily a judicial act covered by absolute immunity." *Rippy*, 270 F.3d at 421 (emphasis

added); *Pittman*, 640 F.3d at 726 ("conduct pursuant to a social worker's investigatory functions

are not entitled to absolute immunity") (citing *Achterhof v. Selvaggio*, 886 F.2d 826, 830 (6th

Cir. 1989)). A social worker's actions in carrying out the removal of a child are not covered by

absolute immunity. *O'Donnell*, 335 F. Supp. 2d at 826-27. *See e.g.*, *Achterhof*, 886 F.2d at 830-

31; *Brown v. Montana*, 442 F. Supp. 2d at  989 (holding that absolute immunity did not defeat

claim related to removal of child by social worker where such conduct is analogous to function

performed by police officers rather than that of prosecutors).

> Thus, the removal of the Kovacic children and the investigation that led to the

---

[7] In *Kalina*, the Supreme Court held that a prosecutor was *not* entitled to absolute prosecutorial immunity with respect to alleged false statements contained in a certification of probable cause where the act of filing such a certification was not a traditional advocate function, neither federal nor state law required such a certification, and it could have been made by any competent witness. This rule is not applicable here, however, where defendant Ponstingle acted as an advocate when swearing to the truth of the complaint in juvenile court as required by state law. *See* Ohio Rev. Code § 2151.27(A)(1) (requiring the filing of a sworn complaint by the end of the next business day upon  the removal of a child  and his or her placement in shelter care without a court order pursuant to Ohio Rev. Code §§ 2151.31(A), (C)).

removal, both of which preceded the filing of a formal complaint, are functions that are analogous to those performed by investigators or police officers and are therefore not entitled to absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74, 113 S. Ct. 2606, 2616, 125 L. Ed. 2d 209 (1993) ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.") (internal citations omitted); *Pittman*, 640 F.3d at 726. In this regard, defendants' "officer of the court" argument is unavailing; this label by itself does not transform their otherwise non-prosecutorial conduct –the removal of the Kovacic children –into conduct of a judicial nature. The seizure of persons is not a judicial or prosecutorial function; it is a police function. *See Kalina v. Fletcher*, 522 U.S. 118, 126, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997); *Fanning v. Montgomery Cnty. Children & Youth Servs.*, 702 F. Supp. 1184, 1188 (E.D. Pa. 1988).

Moreover, the situation at issue here is distinguishable from those cases involving ministerial officers or employees who received immunity from suit. In the case law summarized in *Waits v. McGowan*, 516 F.2d 203, 206 (3d Cir. 1975), upon which defendants rely, the individuals receiving immunity were acting under the direction of a court order or an instruction from a judge.

> The extensive case law on the subject of immunity for ministerial functions illuminates that the immunity flows from the judge's immunity. Actors who are doing the judge's bidding should not be held liable in a civil rights suit where the order they were implementing came from the bench, given that they are not making the allegedly bad call and have no authority to do so.

*Duprey v. Twelfth Jud. Dist. Ct.*, 760 F. Supp. 2d 1180 (D.N.M. 2009). For defendants to receive

such immunity, the record should reflect they carried out the seizure at the judge's bidding or under an order from the bench. *Id.*

Here, the standing order authorized the removal of children by county workers at their discretion in emergency circumstances; however, it did not compel *these* defendants to remove *these* children. It is indisputable that defendants' decided to remove the Kovacic children prior to the initiation of proceedings in the juvenile court and without the authorization of an impartial arbiter. Consequently, defendants' actions were not ministerial in nature, nor were they doing a judge's bidding; thus, they are not entitled to absolute immunity with regard to claims arising from their conduct up to and through the removal of the children. *Fanning*, 702 F. Supp. at 1188 (denying absolute immunity to social worker who removed child from parents' home pursuant to state statute authorizing "duly authorized officers of the court" to remove children in emergency situations prior to a hearing on the merits and holding "when an official has the power to affect unilaterally the rights and interests of others, and exercises that power unchecked by adversarial proceedings, the official should not be immune from suit.").

Accordingly, defendants' request for absolute immunity is **GRANTED** in part, and **DENIED** in part. To summarize, defendants are entitled to absolute immunity with respect to the initiation of proceedings in the juvenile court, including filing a complaint with the court and seeking a TEC order. As well, defendants are entitled to absolute immunity with respect to their testimony in the juvenile court. Defendants are not entitled, however, to absolute immunity for their conduct that preceded the filing of a formal complaint with the juvenile court, including the removal of the Kovacic children and the investigation leading up to the removal.

**3.      Qualified Immunity**

Qualified immunity shields from liability government officials performing

discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Stated differently, a "defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established."[8] *Morrison v. Bd. of Trs.,* 583 F.3d 394, 400 (6th Cir.2009) (citing *Jones v. City of Cincinnati,* 521 F.3d 555, 559 (6th Cir.2008)).

The Sixth Circuit has typically followed the two-step sequential inquiry set forth in *Saucier v. Katz,* 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). Under *Saucier,* the court first asks whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. If the answer to this initial inquiry is "no," "there is no necessity for further inquiries concerning qualified immunity." *Id.* If, however, a violation could be made out, the "next, sequential step is to ask whether the right was clearly established. This inquiry [ ] must be taken in light of the specific context of the case, not as a broad general proposition [.]" *Id.*

The Court is free to consider the *Saucier* "questions in whatever order is appropriate in light of the issues before" it, *Moldowan v. City of Warren,* 570 F.3d 698, 720 (6th Cir. 2009), "such that [it] need not decide whether a constitutional violation has occurred if [it] find[s] that the [official's] actions were nevertheless reasonable." *Jefferson v. Lewis,* 594 F.3d

---

[8] The Sixth Circuit sometimes includes a third inquiry that considers "whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate what the official allegedly did was objectively unreasonable in light of the clearly established rights." *Curry v. Hensiner,* 513 F.3d 570, 576 (6th Cir. 2008) (internal citation omitted). "The third inquiry impacts the analysis when *despite* the violation of a clearly established constitutional right, the official's conduct was objectively reasonable, and so should still enjoy qualified immunity." *Id.* (emphasis in original).

454, 460 (6th Cir. 2010); *Pearson v. Callahan,* 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Consequently, even if this Court finds the existence of a constitutional violation when viewing the facts in a light most favorable to plaintiffs, a state official is still "entitled qualified immunity unless a reasonable officer would know that his conduct violated a clearly established federal right." *Crocket v. Cumberland Coll.,* 316 F.3d 571, 583 (6th Cir. 2003).

When a defendant raises a qualified immunity defense, the burden is on plaintiffs to prove that qualified immunity does not shield the officials. *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006). Defendants assert they are entitled to qualified immunity from plaintiffs' claims because: (1) they did not violate plaintiffs' constitutional rights; (2) even if plaintiffs have sufficiently alleged a constitutional violation, their rights were not clearly established as of March 2002; and (3) defendants' actions and beliefs were objectively reasonable.

The Court has already held that defendants' actions violated plaintiffs' constitutional rights under the Fourth Amendment (unlawful seizure) and the Fourteenth Amendment (procedural due process); therefore, the only remaining inquiry is whether those rights were clearly established.

### a.  Fourth Amendment Unreasonable Seizure Claim

The second step in the *Saucier* qualified immunity inquiry requires the Court to determine whether defendants' "actions may nonetheless be excused because a reasonable social worker would not know she was violating clearly established law." *Jordan v. Murphy*, 145 F. App'x. 513, 517 (6th Cir. 2005) (citing *Brennan v. Twp. of Northville,* 78 F.3d 1152, 1154 (6th Cir.1996)). The dispositive inquiry is "whether it would be clear to a reasonable officer [or social worker] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

Defendants assert that the contours of plaintiffs' Fourth Amendment rights were not clearly established at the time of the seizure, and even if they were, defendants are entitled to immunity because their actions, albeit mistaken, were objectively reasonable. Defendants argue that the Sixth Circuit's holding in *Doe v. Staples,* 706 F.2d 985, 986 (6th Cir. 1983) is inapposite and did not establish the law in a particularized manner, and that the other cases relied on by plaintiffs were issued after March 2002 and are not controlling. Thus, they contend, it was not clearly established in March 2002 that their actions violated plaintiffs' constitutional rights.

The Court agrees that the *Staples* case, which addressed *due process rights* in the child removal context, provides no guidance as to what constitutes exigent circumstances necessitating the removal of a child without a court order or warrant. The Court finds, however, that the other decisions relied on by plaintiffs do establish the contours of plaintiffs' Fourth Amendment rights as of March 2002. While those cases were issued after the events in this case, they addressed the state of the law prior to the period at issue here.

In *Walsh*, the court rejected the defendant social workers' contention that constitutional rights of parents and their children to be free from unreasonable searches and seizures was not clearly established by Sixth Circuit case law as of February 2001. The court held  that "[t]he fact that there is no Sixth Circuit precedent on the question of the extent to which social workers are or are not covered by the Fourth Amendment is not a basis for extending immunity to them." *Walsh*, 240 F. Supp. 2d at 759. The court noted that the basic Fourth Amendment doctrines "are well-fixed in our constitutional jurisprudence," and that"[t]he absence of a decision directly on point is immaterial."[9] *Id.* at 759-60 ("A prior case on all fours is

---

[9]    Basic and applicable Fourth Amendment principles were clearly articulated and firmly embedded in our constitutional jurisprudence well before the events giving rise to this suit: government officers cannot enter a home without either prior court approval, consent, or exigent circumstances; the scope of a search is limited by its justification; all persons are entitled to

not necessary […]. […] The Fourth Amendment case law has been developed in a myriad of situations […]. […] We find no indication that the principles developed in emergency situation cases…will be ill suited for addressing cases like the one before us.") (quoting *Good v. Dauphin Cnty. Soc. Servs. For Children & Youth*, 891 F.2d 1087, 1094 (3d Cir. 1989)). The court concluded that social workers, as agents of the state, are presumed to know the "bedrock principles" when they enter a private home in the name of ensuring child welfare. *Id.*

In *O'Donnell*, the court addressed whether there was a clearly established right as of February 2000 against removal based on a family court referee's verbal order where the caseworkers were following a standard practice, endorsed by state law and never previously criticized by a court. The court held:

> While that may be true, Plaintiffs additionally allege that the removal was constitutionally flawed because the CPS Defendants failed to adequately investigate the circumstances leading to the removal, failed to verify critical information before seizing the children, and recklessly gave the referee false information. Viewing these allegations in the light most favorable to Plaintiffs, as the Court must on summary judgment, the removal process may have suffered constitutional defects based on these additional facets of the CPS Defendants' conduct. Accordingly, the CPS Defendants are not entitled to qualified immunity from Plaintiffs' claims stemming from the removal.

*O'Donnell v. Brown*, 335 F. Supp. 2d at 827-28. Plaintiffs' comparable allegations raised in this case indicate that the removal process here may have also suffered constitutional defects.

The Court presumes that defendants, as state actors, know the bedrock fourth amendment principles governing searches and seizures. "[I]t is core Fourth Amendment doctrine that a seizure without consent or a warrant is a 'reasonable' seizure if it is justified by 'exigent

---

freedom of movement absent reasonable suspicion of criminal or other unlawful activity; no arrest can be made without probable cause; and no search of an individual for weapons can be undertaken unless incident to a lawful arrest or on an articulable basis for believing he or she is armed and dangerous. These are bedrock principles that the law properly presumes are known to every agent of the state who seeks to enter a private home-even in the name of ensuring a child's welfare.

*Walsh*, 240 F. Supp. 2d at 758-59.

circumstances.'" *Tenenbaum v. Williams*, 193 F.3d 581, 604 (2d Cir. 1999). Defendants in this case did not seek a court order supported by probable cause prior to the seizure of the Kovacic children, and, as noted earlier, no exigent circumstances warranted the removal of the children. Further, plaintiffs contend that defendants did not undertake any investigation prior to acting on the allegations of abuse disclosed during the "staffing" meeting. Under these circumstances, no reasonable social worker could conclude that the removal of a child was lawful. *Walsh*, 240 F. Supp. 2d at 759; *O'Donnell*, 335 F. Supp. 2d at 827-28. *See also*, *Wooley*, 211 F.3d at 925-26 (holding that Supreme Court constitutional jurisprudence has long clearly established that the right to be free from unreasonable seizures requires the presence of either a warrant or probable cause). Accordingly, defendants are not entitled to qualified immunity on plaintiffs' Fourth Amendment unlawful seizure claim and their motion is **DENIED**.

> **b.**      **Fourteenth Amendment Procedural Due Process Claim**

The Court also finds that the contours of plaintiffs' procedural due process rights were clearly established law as of March 2002. *See Staples*, 706 F.2d at 986 (holding that, at a minimum, a parent is entitled to notice and hearing prior to the removal of his/her children, unless exigent circumstances exist). No reasonable social worker could conclude that the law permitted her to remove a child without notice or a pre-deprivation hearing where there was no emergency. Accordingly, defendants' request for qualified immunity on plaintiffs' Fourteenth Amendment procedural due process claims is **DENIED**.

**4.**      **Compensatory Damages**

Plaintiffs claim damages for the entire ten-month period that they were separated from their mother. Defendants argue that as a matter of law they can only be held liable for compensatory damages for the three days that passed between the removal (March 26, 2002) and

the probable cause hearing (March 29, 2002). Defendants contend that once the juvenile court granted emergency custody to the County, any claim that defendants' actions proximately caused the removal was foreclosed. *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 659 (6th Cir. Moreover, as of August 2002, defendants had no responsibility for the matter.

In light of defendants' argument and the Court's ruling that defendants Ponstingle, Cameron and Csornok are entitled to absolute immunity from suit for the filing of a complaint in the juvenile court and their testimony during the ensuing proceedings, the Court finds that defendants are not liable for damages incurred by plaintiffs from March 29, 2002 onward.

Moreover, plaintiffs' brief in opposition to defendants' motion cites a litany of events that occurred in the juvenile court after the removal that defendants did not proximately casue. (Doc. 129 at 16-18.) For example, it was the juvenile court, not defendants, that allegedly did not permit Ms. Kovacic to offer testimony or witnesses; that failed to cite reasonable efforts at reunification; that made amendments to the Complaint filed by CCDCFS; that overruled Ms. Kovacic's objections; that failed to conduct a timely dispositional hearing; and that failed to take the necessary steps to finalize the decision of abuse and neglect. (*Id.*) As observed in *Pittman*, the juvenile court has the ultimate decision-making power with respect to placement and custody, it alone could deprive plaintiffs of their constitutional rights as of March 29, 2002. The County was merely a party to the proceedings at that point and it is not liable for damages for the juvenile court's decision to grant custody of the Kovacic children to the County.

In any event, the *Rooker-Feldman* doctrine precludes plaintiffs from seeking damages for injuries caused by state-court judgments, such as the juvenile court's finding that the Kovacic children were abused or neglected and its award of temporary custody to the

County. As the Sixth Circuit recently explained,

> The *Rooker-Feldman* doctrine is based on two United States Supreme Court decisions interpreting 28 U.S.C. § 1257(a). *See D.C. Ct. App. v. Feldman,* 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923). The statute is designed to prohibit end-runs around state court judgments that might occur when parties go into federal court essentially seeking a review of a state-court decision. To accomplish this, the statute states that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." The *Rooker-Feldman* doctrine, as it has become known, is based on the negative inference that, if appellate court review of such state judgments is vested in the Supreme Court, then it follows that such review may not occur in the lower federal courts.

*Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 308-09 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 804, 178 L. Ed. 2d 538 (2010). The pertinent inquiry under the *Rooker-Feldman* doctrine is whether the source of injury is the state court judgment. *Id.* The Sixth Circuit held that the doctrine does not bar plaintiffs' actions arising from the *conduct* of the County and of the social workers, as outlined elsewhere in this Opinion*, that led up to* the juvenile court's decision to award temporary custody to the County. *Kovacic*, 606 F.3d at 308. However, to the extent that plaintiffs seek damages for the ten-month period following the juvenile court's initial order, they are claiming that the decision of the state court was incorrect or that the decision violated their constitutional rights. This is precisely the type of claim that the *Rooker-Feldman* doctrine prohibits. *Id.* at 309 ("The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.") (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283-84, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)).

51

Accordingly, defendants' motion for partial summary judgment as to plaintiffs' claim for damages following the probable cause hearing on March 29, 2002 is **GRANTED**.

**5.      Punitive Damages**

Defendants contend that governmental entities are not liable for punitive damages as a matter of law. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). This argument is well taken and unopposed by plaintiffs; therefore, the Court will grant defendants' motion and dismiss plaintiffs' claim for punitive damages as against defendant Cuyahoga County.

Next, defendants argue that the individually named defendants are not liable for punitive damages pursuant to § 1983. Punitive damages may be assessed in a § 1983 case when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983). Further, the Supreme Court has noted that evidence of sufficiently serious misconduct "that calls for deterrence and punishment [...] above that provided by compensatory awards" triggers the jury's discretion to consider awarding punitive damages. *Id*. at 54, 103 S. Ct. at 1639.

Defendants assert that they genuinely believed that the children were at risk of harm and thus, as a matter of law, are not liable for punitive damages. In support of this assertion, defendants cite to the unrefuted deposition testimony of defendants Csornok, Ponstingle, and Cameron, in which each of the defendants testified that they believed that the Kovacic children were at imminent risk of being physically harmed if swift action was not taken.

Again, plaintiffs have offered no opposition to defendants' arguments on punitive damages liability. Notwithstanding the lack of opposition from plaintiffs, defendants' burden on summary judgment remains unchanged. *Cross v. Nw. Airlines, Inc.*, 998 F. Supp. 803, 805 (N.D.

Ohio 1998) ("The moving party's burden is not lessened when its motion is unopposed.").

When, as here, the motion is unopposed, the Court "must review carefully those portions of the submitted evidence designated by the moving party." *Guarino v. Brookfield Twp. Trs.,* 980 F.2d 399, 410 (6th Cir. 1982). The Court will not, however, "*sua sponte* comb the record" from plaintiffs' perspective. *Id.* Instead, the Court may reasonably rely on defendants' "unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Id.* If such evidence supports a conclusion that there is no genuine issue of material fact, the Court should determine that defendants have carried their burden, and "judgment […] shall be rendered forthwith […]." *Id.* (quoting Fed. R. Civ. P. 56(c)).

As stated above, punitive damages are only warranted if defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Wade,* 461 U.S. at 56, 103 S. Ct. 1625. Here, the unrefuted testimony establishes that defendants acted upon their belief that there was an immediate threat to the physical safety of the Kovacic children. There is no basis in the record to doubt defendants' stated motives. Moreover, plaintiffs have not offered any evidence to refute defendants' testimony as to their motives and have not demonstrated that defendants acted with evil intent, ill will or in bad faith. Thus, the only remaining issue is whether defendants' conduct demonstrates a reckless or callous indifference to plaintiffs' rights.

In *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 534-539, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999), the Court offered guidance on the meaning of the reckless or callous indifference standard.[10] The Court pointed out that the standard is *subjective* and, to prove

---

[10] Though *Kolstad* discusses the punitive damages provision for Title VII claims, 42 U.S.C. § 1981a(b)(1), it has been observed that the discussion applies to § 1983 because Congress modeled § 1981a(b)(1) on *Smith* 's discussion

reckless indifference, requires evidence that the defendant acted "in the face of a perceived risk that [his or her] actions [would] violate federal law." *Kolstad*, 527 U.S. at 536, 119 S. Ct. 2118; *see also, Williams v. Kaufman Cnty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (holding that standard is subjective and requires plaintiff to show a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations).

Here, plaintiffs have wholly failed to point to any evidence in the record that demonstrates that defendants knew that they were violating plaintiffs' federal rights when they removed them from their home or that defendants recognized that they might be violating the children's rights.[11] *See Swipies v. Kofka*, 419 F.3d 709, 718 (8th Cir. 2005) (holding that father was not entitled to punitive damages award based upon sheriff's deprivation of his procedural due process rights arising from removal of child from father's home where there was no showing that the deputy knew he was violating the father's rights or was aware that he might be violating his rights). In fact, it is undisputed that defendants' held the subjective belief that their actions were authorized by the juvenile court's standing order and the circumstances. While defendants' conduct might be considered objectively unreasonable, there is no basis in the record upon which a reasonable jury could conclude that defendants were subjectively aware that their conduct violated plaintiffs' federal civil rights.

In light of the foregoing, the Court finds that plaintiffs have failed to make a showing sufficient to establish that defendants were motivated by evil motive or intent, or acted with a

---

of punitive damages under § 1983. *Kolstad,* 527 U.S. at 535-36, 119 S. Ct. 2118; *Swipies v. Kofka* 419 F.3d 709, 718 (8th Cir. 2005) (applying *Kolstad* standard in Section 1983 case); *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (same).

[11] Note this is a distinctly different standard than the qualified immunity test, which is an objective standard and asks whether a reasonable social worker should have known that his or her actions would violate clearly established constitutional rights. *Saucier*, 533 U.S. at 202. Thus, although the Court finds that defendants' actions were not objectively reasonable, this does not automatically lead to the conclusion that punitive damages are available. Plaintiff must also demonstrate that defendants knew that they were violating plaintiffs' federal rights or recognized that they might be. *Kofka*, 419 F. 3d at 718.

reckless or callous indifference to plaintiffs' federally protected rights; therefore, summary judgment is appropriate for the defendants on this issue. *Celotex,* 477 U.S. at 322. Accordingly, defendants' motion for summary judgment on the issue of punitive damages is **GRANTED**.

## IV.    CONCLUSION

For all of the foregoing reasons, the parties' cross motions for summary judgment (Docs. 120, 121) are **GRANTED** in part, and **DENIED** in part. To summarize, the rulings of the Court are as follows:

- Defendants' motion for summary judgment as to all claims brought by plaintiffs against defendant Pamela Gaylord in any capacity is **GRANTED**, and defendant Gaylord is hereby dismissed as a party;

- Defendants' motion for summary judgment as to all claims brought by plaintiffs against defendant Cuyahoga County is **GRANTED**, and defendant Cuyahoga County is hereby dismissed as a party;

- Defendants Patricia Campbell Ponstingle, Pam Cameron, and Vikki Csornok's motion for summary judgment on the basis of absolute immunity is **GRANTED** in part and **DENIED** in part. Defendants are entitled to absolute immunity with respect to the initiation of proceedings in the juvenile court, including filing a complaint with the court and seeking a TEC order. As well, defendants are entitled to absolute immunity with respect to their testimony in the juvenile court. Defendants, however, are not entitled to absolute immunity for their seizure and removal of the Kovacic children;

- Defendants Ponstingle, Cameron and Csornok's motion for summary judgment on the basis of qualified immunity for their seizure and removal of the children is

**DENIED**;

- Summary judgment is **GRANTED** in favor of plaintiffs and **DENIED** as to defendants on plaintiffs' claims for unlawful seizure (portion of Count II) and deprivation of their procedural due process rights to a notice and hearing (portion of Count IV) as against defendants Ponstingle, Cameron, and Csornok;

- Defendants' motion for partial summary judgment on compensatory damages is **GRANTED**: specifically, plaintiffs' claim for compensatory damages is limited to the three-day period between the removal (March 26, 2002) and the probable cause hearing (March 29, 2002);

- Defendants' motion for summary judgment with respect to punitive damages is **GRANTED**;

- Summary judgment is **GRANTED** in favor of defendants and **DENIED** as to plaintiffs as to the following claims: (1) plaintiffs' claim that the standing order is facially unconstitutional (portion of Count II); (2) plaintiffs' substantive due process claim (Count III); (3) plaintiffs' procedural due process claim insofar as it alleges that defendant Ponstingle made false statements to the juvenile court (portion of Count IV); and (4) plaintiffs' claim for punitive damages.

**IT IS SO ORDERED**.

Dated: August 25, 2011

                                       _____
                                       **HONORABLE SARA LIOI**
                                       **UNITED STATES DISTRICT JUDGE**